1

**SIRI & GLIMSTAD LLP**
Mason Barney (New York Bar No. 4405809,
*Pro Hac Vice to be filed*)
Email: mbarney@sirillp.com
Kyle McLean (Cal. Bar No. 330580)
Email: kmclean@sirillp.com
745 Fifth Ave, Suite 500
New York, NY 10151
Telephone: 212-532-1091
Facsimile: 646-417-5967

**LAUKAITIS LAW FIRM LLC**
Kevin Laukaitis (*Pro Hac Vice to be filed*)
737 Bainbridge Street #155
Philadelphia, PA 19147
Phone: (215) 789-4462
Email: klaukaitis@laukaitislaw.com

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER MOREHOUSE, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> IDEAVILLAGE PRODUCTS CORP., D/B/A COPPER FIT, a New Jersey corporation, <br><br> Defendant. | Case No. **'23 CV 0298 JLS  KSC** <br><br> **CLASS ACTION COMPLAINT** <br><br> Demand for Jury Trial |

Plaintiff Jennifer Morehouse, individually and on behalf of the Class defined below of similarly situated persons ("**Plaintiff**"), alleges the following against Defendant Ideavillage Products Corp. d/b/a Copper Fit ("**Defendant**," or "**Copper Fit**"), based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## <u>NATURE OF THE ACTION</u>

1.    Plaintiff brings this class action against Defendant to redress the false marketing claims with which Defendant has saturated its advertising for a popular line of compression garments, namely

1

its Copper Fit ICE Compression Knee Sleeve, Copper Fit ICE Plantar Fascia Ankle Sleeve, Copper Fit ICE Compression Gloves, Copper Fit ICE Compression Elbow Sleeve, Copper Fit ICE Compression Socks and the Copper Fit ICE Compression Back Support (the "**Copper Fit ICE Products**"[1]). Specifically, Defendant is making false claims that (a) CoQ10 infused into the fabric of the Copper Fit ICE Products is motion activated and then released and absorbed into the human body when using the product, and (b) the purportedly absorbed CoQ10 provides health benefits, including increased energy.

2.     Because Defendant's Copper Fit ICE Products cannot deliver the alleged benefits of CoQ10 (which are themselves dubious), Plaintiff seeks to put an end to Defendant's unfair, false, and deceptive marketing and sales of its Copper Fit ICE Products and to obtain the financial redress to which Plaintiff and class members are entitled.

## PARTIES

3.     Plaintiff Jennifer Morehouse, is, and at all times mentioned herein was, an individual citizen of the State of California residing in the County of San Diego.

4.     Defendant Ideavillage Products Corp. is a New Jersey corporation with its principal place of business at 155 Route 46 West, Wayne, New Jersey 07470.

5.     Defendant develops, manufactures, markets, and sells various consumer products, including the Copper Fit® branded products described here, to consumers throughout the United States, including in California. Defendant promotes and sells its products, including the Copper Fit branded products, through national direct response television advertising commonly called "As Seen on TV" and an active social media presence (i.e., Facebook, Instagram, Twitter, etc.). Defendant also promotes and sells its products (a) through well-known and leading mass retailers in the United States, including, but not limited to, Target, Walmart, CVS, Rite Aid, Walgreens, Dick's Sporting Goods, and more, (b) online through the web sites of the foregoing retailers and major online retailers, and (c)

---

[1]    Plaintiff reserves the right to add to or amend the definition of the "Copper Fit ICE Products" through facts learned through discovery or further investigation.

2

online through its own Copper Fit branded web sites, including https://www.copperfitusa.com, https://www.getcopperfit.com, https://www.copperfitback.com/ and https://copperfitice.com/.

6.    Defendant has achieved significant success selling its Copper Fit branded products (copper-infused compression garments such as knee sleeves, elbow sleeves, back belts or braces, socks, and gloves) since their introduction in 2014, by using substantial marketing campaigns led by its brand ambassadors, NFL Hall of Fame and Super Bowl champions Brett Favre and Jerry Rice and, recently, Academy Award-Winning actress, Gwyneth Paltrow.

7.    Defendant's advertisements and promotions are so ubiquitous that Copper Fit has become a well-recognized brand for compression and support garments that consumers trust.

8.    Defendant touts itself as a health and wellness company that purportedly uses innovative technologies to enhance the health and wellness of the customers who buy and use its products.

9.    The copperfitusa.com web site links to an "About Us" landing page and describes the Copper Fit story this way: "Copper Fit® knows what it's like when you are unable to perform at your best. We know the cycle of soreness, pain, and longer recovery periods. We believe there is a better way. We are motivated by the idea of living in a world with less pain and increased mobility; encouraged by new technologies, materials, and fabrics designed to improve performance, support joints and muscles, aid in recovery …". On the same page Copper Fit emphasizes "Our Mission" in stating: "Millions of people, from extreme athletes to everyday people, have already benefited from Copper Fit® products. We always keep them and our mission in mind: to empower people to stay active, feel better and enjoy life, every day.[2]

10.    In the same December 20, 2021 Press Release, Defendant added in a section entitled "About Copper Fit" that "Copper Fit is about seeking revolutionary, copper-infused technologies that support active, healthy lifestyles. The company mantra is to bring health and wellness to the forefront of your everyday through a wide range of products designed to provide peace, comfort, and performance at any age. Copper Fit's innovative technologies are meant to empower and enhance your

---

[2] *See* https://www.copperfitusa.com/pages/about-us last viewed on February 14, 2023.

CLASS ACTION COMPLAINT

body to a heightened wellbeing and provide purpose-driven, copper- infused products that work naturally with your body."[3]

11.    As shown below, Defendant made numerous misrepresentations and omissions of material fact regarding the Copper Fit ICE Products in order to entice Plaintiff and the putative Class of Copper Fit ICE Product purchasers. Plaintiff and the Class members read and relied on Defendants' misrepresentations and omissions and paid a price premium for Defendant's Products. Had Plaintiff and all reasonable consumers, including Class[4] members, known Defendant's Copper Fit ICE Products were mislabeled and misrepresented, they would not have purchased the Copper Fit ICE Products or would have paid less for them.

12.    This Class Action Complaint seeks to recover monetary damages on behalf of Plaintiff and the Class, and injunctive relief to halt Defendant's deceptive and illegal actions alleged herein.

## JURISDICTION AND VENUE

13.    The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

14.    This Court has jurisdiction over the Defendant because it operates in this District, and the unlawful business practices which give rise to this action likely occurred in this District. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District. Venue is also proper because Plaintiff Morehouse resides in this District.

/ / /

/ / /

/ / /

---

[3] *Id.*
[4] The precise definition of the "Class" is defined below.

4

## COMMON FACTUAL BACKGROUND

**I.     Defendant's Prior False Claims That The Copper In Its Copper-Infused Copper Fit Products Provided Therapeutic, Health and Performance Benefits.**

15.    Through an extensive and nationwide marketing campaign, Defendant marketed its Copper Fit branded compression clothing products, including the "Copper Fit Elbow Sleeve," "Copper Fit Knee Sleeve" and "Copper Fit Back Pro," as "advanced cutting-edge compression garments designed to help relieve muscle and joint soreness." Defendant claimed that its elbow and knee sleeves "provide support for muscle stiffness," "reduce recovery time of muscles," "support increased oxygenation of working muscles," and "help prevent strain and fatigue," in addition to other representations. Defendant also claimed that its Copper Fit Back Pro product provided, among other benefits, "lower back support for greater mobility and comfort," "everyday support and relief for lower back muscles," and "maximum comfort and support for lower back muscles."

16.    Defendant also claimed that "the Copper Fit high-performance compression fabric is blended with therapeutic copper, essential to your body; two technologies combined to help provide support for muscle soreness and aid in recovery and performance," thereby implying that copper infused in the Copper Fit products was absorbed into the human body to provide "essential" and "therapeutic" benefits to consumers.

17.    Defendant's implications regarding the health and therapeutic benefits of its copper-infused Copper Fit products were false because the copper infused in the products was not absorbed into the human body from wearing and using the products. Plus, even if any infused copper was absorbed into the human body, it did not provide any therapeutic, health or performance benefits.

18.    Defendant was not alone in cheating consumers with false representations regarding the purported therapeutic, health and performance benefits of its copper-infused compression garments.

19.    On November 25, 2015, the Federal Trade Commission (the "FTC") filed a complaint against Tommie Copper, Inc. ("TCI"), a competitor of Defendant, and its owner, Thomas Kallish, claiming that they falsely and deceptively advertised that their copper-infused compression clothing provided pain relief benefits to consumers or relieved chronic or severe pain or inflammation caused

5

by diseases, including multiple sclerosis, arthritis and fibromyalgia, and that such false and deceptive conduct caused substantial injury to consumers and unjustly enriched TCI and Kallish (the "Tommie Copper FTC Action").[5]

20.    The FTC settled the Tommie Copper FTC Action with a stipulated federal court order (a) imposing an $86.8 million judgment against the  Defendant, and upon Defendant's payment of $1.35 million, suspending the balance of the judgment amount subject to compliance with certain other conditions, (b) enjoining the  Defendant from continuing to make misrepresentations regarding the pain or inflammation reducing benefits of copper-infused products, and (c) requiring TCI and Thomas Kallish to have competent and reliable scientific evidence before making future claims about pain relief, disease treatment, or health benefits.[6]

21.    Consumers also filed class action lawsuits against TCI based on its false claims that its copper-infused compression clothing relieved pain and provided other health benefits. TCI settled those claims on a class basis for $750,000.[7]

22.    Defendant also faced consumer class actions similar to those filed against TCI. For example, on August 13, 2015, three California residents filed a proposed class action against Copper Fit in the U.S. District Court for the Central District of California alleging that Copper Fit falsely and deceptively promoted its copper-infused compression products, including the "Copper Fit Elbow Sleeve, Copper Fit Knee Sleeve: and "Copper Fit Back Pro," as providing therapeutic and health benefits, including purportedly relieving pain, relieving muscle and joint stiffness and soreness, preventing strain and fatigue, reducing swelling, and improving recovery time.[8] Similarly, on May 15, 2015, a resident of Iowa commenced a proposed class action against Copper Fit in the U.S. District Court for the District of New Jersey asserting similar claims.[9]

---

[5] See *Federal Trade Commission vs. Tommie Copper, Inc. et, al.*, Case No. 7:15-cv-09304-VB, Dkt. No. 3.
[6] *See Federal Trade Commission vs. Tommie Copper, Inc.* et, al., Case No. 7:15-cv-09304-VB, Dkt. No. 5). *See also* https://www.ftc.gov/news-events/news/press-releases/2015/12/tommie-copper-pay-135-million-settle-ftc-deceptive-advertising-charges (FTC press release regarding the settlement  order and judgment) last viewed on February 14, 2023.
[7] *See* https://topclassactions.com/lawsuit-settlements/closed-settlements/tommie-copper-athletic-clothing-class-action-settlement/ last viewed on February 14, 2023. *See generally In re: Tommie Copper Products Consumer Litigation*, Case No. 7:15-cv-03183-AT, in the U.S. District Court for the Southern District of New York.
[8] *See Debra Murphy et al v. IdeaVillage Products Corp.*, 5:15-cv-01638-AB-DTB, Dkt. No. 1.
[9] *See Ortiz v. Ideavillage Products Corp.*, 2:15-cv-03365-ES-JAD, Dkt. No. 1.

6

23.     Although the claims in the earlier California and New Jersey actions had merit, on August 7, 2015, and before the certification of any class, the plaintiff filed a notice of dismissal of the New Jersey action against Copper Fit,[10] and on December 2, 2016, and before the certification of any class, the parties stipulated to the dismissal of the California action against Copper Fit.[11]

24.     Since resolving the class action litigation it faced in 2015 and 2016, Copper Fit made some changes to its claims of therapeutic and health benefits stemming from the copper in its copper-infused compression clothing. However, as alleged below, Copper Fit continues to make false and misleading claims regarding the Copper Fit ICE Products as of the date of this Class Action Complaint.

## II.     Defendant's False and Misleading Claims That CoQ10 In Its CoQ10-Infused Copper Fit ICE® Products Is Absorbed Into the Human Body and Provides Health Benefits, Including Increased Energy.

25.     Coenzyme Q10, commonly called CoQ10, is an antioxidant that the human body naturally produces. Human cells use CoQ10 for growth and metabolism.[12]

26.     The vast majority of people naturally produce sufficient CoQ10 and do not require any additional CoQ10 for their health and well-being, including energy levels. For some people, CoQ10 blood levels may decrease due to age, certain conditions such as heart disease, or cholesterol lowering medications (*i.e.*, statins).[13]

27.     "CoQ10 dietary supplements are available as capsules, chewable tablets, liquid syrups, wafers and by IV." Such dietary supplements "might help prevent or treat certain heart conditions, as well as migraine headaches." According to the Mayo Clinic, "[b]ecause CoQ10 is involved in energy production, it's believed that this supplement might improve your physical performance. However, research in this area has produced mixed results."[14]

---

[10] *See Ortiz v. Ideavillage Products Corp.*, 2:15-cv-03365-ES-JAD, Dkt. No. 17.
[11] *See Debra Murphy et al v. IdeaVillage Products Corp.*, 5:15-cv-01638-AB-DTB, Dkt. No. 27.
[12] *See* https://www.mayoclinic.org/drugs-supplements-coenzyme-q10/art-20362602 last viewed on February 14, 2023.
[13] *Id.*
[14] *Id.* The web site of the Oregon State University Linus Pauling Institute Micronutrient Information Center (https://lpi.oregonstate.edu/mic/dietary-factors/coenzyme-Q10#athletic- performance) states that "[t]here is little evidence that supplementation with coenzyme Q10 improves athletic performance in healthy individuals. A few placebo-controlled trials have examined the effects of 100 to 150 mg/day of supplemental coenzyme Q10 for three to eight weeks on physical performance in trained and untrained men. Most did not find significant differences between the group taking coenzyme Q10 and the group taking placebo with respect to measures of aerobic exercise performance, such as maximal oxygen consumption (VO2 max) and exercise time to exhaustion (86-90). One study

---

28.    The Mayo Clinic recommends that people only take CoQ10 supplements "under your doctor's supervision."[15]

29.    CoQ10 is one of the most popular dietary supplements in the United States,[16] and the CoQ10 dietary supplements industry has engaged in a massive promotion of untold, but questionable, purported CoQ10 health benefits.

30.    The CoQ10 dietary supplement industry has generated its own controversy. To realize any benefits of CoQ10 supplementation at a cellular level, an individual must achieve effective or optimum CoQ10 blood levels. In its raw form, however, CoQ10 is a crystalline powder that is insoluble in water, and poorly soluble in fat, and thus not easily absorbed even in the digestive track when taken by mouth (let alone from fabric through the skin). CoQ10 supplement manufacturers have faced their own class action lawsuits asserting that they have made false claims regarding the effectiveness of their CoQ10 supplements and the absorption rates of such supplements when ingested.[17]

31.    In order to take advantage of the CoQ10 "health" hype created by the diet supplement industry, and to deceive consumers, Defendant introduced the Copper Fit ICE Products as a brand extension line of its existing Copper Fit branded products.[18]

32.    Defendant, via its websites, product packaging, social media, online retail outlets, and other advertising and promotion, prominently markets and sells its Copper Fit ICE Products as being infused with CoQ10 through "micro-encapsulation technology," and falsely claims that the infused CoQ10 is motion activated and then released and absorbed into the human body  when using the

---

found the maximal cycling workload to be slightly (4%) increased after eight weeks of coenzyme Q10 supplementation compared to placebo, although measures of aerobic power were not increased (91). Two studies actually found significantly greater improvement in measures of anaerobic (87) and aerobic (86) exercise performance with a placebo than with supplemental coenzyme Q10. More recent studies have suggested that coenzyme Q10 could help reduce both muscle damage-associated oxidative stress and low-grade inflammation induced by strenuous exercise (92-95). Studies on the effect of supplementation on physical performance in women are lacking, but there is little reason to suspect a gender difference in the response to coenzyme Q10 supplementation."

[15] *Id.*

[16] *See* https://www.consumerlab.com/news/consumers-returned-to-pre-pandemic-supplement- uses/02-24-2022.

[17] *See, e.g.*, https://www.prnewswire.com/news-releases/coq-10-class-action-settlement-300686138.html (Walmart settles CoQ10 supplement class action for $1.3 million) last viewed on February 14, 2023.

[18] *See, e.g.*, https://web.archive.org/web/20220527063329/https://www.copperfitusa.com/collections/ice (archived screen capture of https://www.copperfitusa.com/collections/ice as it appeared on May 21, 2022) last viewed on February 14, 2023.

CLASS ACTION COMPLAINT

product, and that the purportedly absorbed CoQ10 provides health benefits, including increased energy.

33.    The Copper Fit ICE Products packaging contains uniform false and misleading statements regarding the benefits of CoQ10. The product packaging of the Copper Fit ICE compression sleeve product states on the front that the product provides "RELIEF + RECOVERY" and contains "MICRO ENCAPSULATED MENTHOL & COQ10" and states on the back that the "CoQ10" "PROMOTES ENERGY RECOVERY" and repeats the Copper Fit ICE tag line: "Motion activated, the more you move the more you gain." The packaging of each and every one of the Copper Fit ICE Products displays the same or similar statements. Exemplars of the packaging of the Copper Fit ICE Products are shown here:



CLASS ACTION COMPLAINT



34.    Defendant's claim on its packaging, that the CoQ10 infused in its Copper Fit ICE Products is motion activated and then released and absorbed into the human body when the product is used, is false and misleading with respect to each of the Copper Fit ICE Products.

35.    Defendant's additional claim, that the purportedly absorbed CoQ10 provides health benefits, including increased energy, is also false and misleading with respect to each of the Copper Fit ICE Products.

36.    Copper Fit's advertising of the Copper Fit ICE Products contains the same false and misleading claims as its product packaging. Accordingly, Defendant's false and misleading claims are uniform as to all Products subject to this action.

37.    On May 31, 2020, Copper Fit posted to its Twitter account a description of its new Copper Fit ICE compression garments: "Here's the tea - Copper Fit Ice is the World's FIRST compression sleeve infused with a patented* micro-encapsulation technology delivering the cooling

10

sensation of Menthol and the energizing properties of CoQ10 with every move you make." That tweet is shown here:[19]



38.     On October 29, 2020, Copper Fit published a video advertisement promoting the Copper Fit ICE product line, including, specifically, the Copper Fit ICE knee sleeve. The slickly produced video highlights that Copper Fit ICE Products are infused with Menthol and CoQ10. The video claims the Copper Fit ICE Products provide the healing sensation of Menthol and the "energizing properties of CoQ10" because the Menthol and CoQ10 infused in the fabric are both supposedly released from the fabric and absorbed into the human body when "motion activated" by the consumer wearing the product.[20]

39.     On July 29, 2021, Copper Fit published another video advertisement on YouTube promoting the Copper Fit ICE product line, including, specifically, the Copper Fit ICE Knee Sleeve. The video reiterates that Copper Fit ICE Products contain the "energizing properties of CoQ10" because the CoQ10 infused  in the compression garments are released from the fabric and absorbed into the human body when "motion activated" by the consumer wearing the product.[21]

---

[19] See https://twitter.com/CopperFit/status/1267076868815171585?cxt=HHwWgsC9zd3sx5UjAAAA last viewed on February 14, 2023.

[20] See https://www.ispot.tv/ad/tZJN/copper-fit-ice-knee-sleeves-motion-activated-menthol-featuring-brett-favre-jerry-rice (video with Brett Favre and Jerry Rice promoting Copper Fit ICE knee sleeves) last viewed on February 14, 2023.

[21] See https://www.youtube.com/watch?v=fdJlVfJoPi0b last viewed on February 14, 2023.

---

CLASS ACTION COMPLAINT

40.    The voice over to the video advertisement states in the first 24 seconds: "When knee pain stops you in your tracks and you need relief to keep you moving. Introducing Copper Fit ICE, the world's first compression sleeve to include the healing sensation of Menthol and the energizing properties of CoQ10. These micro-encapsulated ingredients are infused into the compression fabric and are released and absorbed by your movement. The more you move, the more Copper Fit Ice delivers."[22]

41.    Those voice over statements on the video advertisement are accompanied by video of actors using the Copper Fit ICE Knee Sleeve, colorful graphics showing bolts of electricity enveloping the knee wearing the sleeve, and written screen graphics stating:

    a.    "World's First Motion Activated"

    b.    "Now with Menthol and CoQ10"

    c.    "Now Infused with Menthol and CoQ10"

    d.    "Motion Activated"

    e.    "The More you move, the more ICE Delivers"[23]

42.    The following are screenshots from the video advertisement showing the emphasis on the motion activation releasing CoQ10 for absorption into the human body:[24]

---

[22] *Id.*
[23] *Id.*
[24] *Id.*

12

CLASS ACTION COMPLAINT







13





14



43.    After presenting testimonials, the voice over to the video advertisement repeats again: "The cooling sensation of Menthol and the energizing properties of CoQ10. Activated by motion to keep you in motion." A woman named Samantha Sage then appears in the video and says: "[t]he more I move, it feels better and better. I haven't experienced anything like this."[25]

44.    Defendant advertised Copper Fit ICE Products directly to consumers on multiple Copper Fit websites and asserted the products provided "energizing properties" to individuals who used these products due to the infusion of CoQ10 in the compression garment.

45.    On May 21, 2022, Copper Fit's copperfitusa.com website touted the benefits of Copper Fit ICE Products including the Compression Back Support, Elbow Sleeve, Compression Gloves, Knee Sleeve, Compression Socks, and Plantar Fascia Ankle Sleeve: "Copper Fit ICE is the first to incorporate the cooling sensation of menthol and the energizing properties of CoQ10 into a patented micro-encapsulation   technology;"   (*Emphasis   added*.)[26]   "Patented**   Micro-Encapsulation Technology infuses menthol and the energizing properties of CoQ10 into the compression fabric."[27]

---

[25] *Id.*
[26] *See, e.g.,* https://web.archive.org/web/20220527063329/https://www.copperfitusa.com/collections/ice (archived screen capture of https://www.copperfitusa.com/collections/ice as it appeared on May 21, 2022) last viewed on February 14, 2023.
[27] https://www.copperfitusa.com/products/ice-plantar-fascia-ankle-sleeve last viewed on February 14, 2023.

15

46.    On May 23, 2022, the Copper Fit ICE website at https://copperfitice.com/ advertised: "Introducing Copper Fit® ICE, the World's FIRST compression sleeve infused with a patented* micro-encapsulation technology delivering the cooling sensation of Menthol and the energizing properties of CoQ10 with every move you make. The more you move, the more ICE delivers!" The site described the Copper Fit ICE Knee Sleeve as "Our Strongest Compression Sleeve Infused with Micro-Encapsulated Menthol & CoQ10!"[28]



[28]    *See*    https://web.archive.org/web/20220523083555/http://copperfitice.com/    (archived    screen    capture    of https://copperfitice.com/ as it appeared on May 23, 2022) last viewed on February 14, 2023.

CLASS ACTION COMPLAINT

**More Compression Support + All-Day Comfort Infused with Patented\* Micro-Encapsuled Technology**

  

**NOW with the cooling sensation of Menthol and the energizing properties of CoQ10**

**Feel Better with ICE Compression Sleeves – Temporary Relief of Aches and Pains!**

Introducing Copper Fit® ICE, the World's FIRST compression sleeve infused with a patented\* micro-encapsulation technology delivering the cooling sensation of Menthol and the energizing properties of CoQ10 with every move you make. The more you move, the more ICE delivers!



47.    Copper Fit's Amazon storefront emphasized these features of the Copper Fit ICE Products. For example, the Amazon storefront page for the "ICE Knee Compression Sleeve Infused with Menthol and CoQ10" stated "Each package contains 1 compression knee sleeve infused with copper, menthol, and CoQ10 … Copper Fit ICE incorporates the cooling sensation of menthol and the energizing properties of CoQ10 into a patented micro-encapsulation technology … The seamless anti-chafing sleeve is breathable, copper-infused to reduce odors, and is infused with the soothing aroma of menthol and the energizing properties of CoQ10. The more you move, the more you release."[29]

48.    Similarly, Copper Fit's Amazon storefront emphasized these features of the Copper Fit ICE Elbow Compression Sleeve, namely that each product "incorporates the cooling sensation of menthol and the energizing properties of CoQ10 into a patented micro-encapsulation technology" and

---

[29] *See* https://www.amazon.com/Copper-Fit-Compression-Infused-Recovery/dp/B084TY9BWF last viewed on February 14, 2023; *See also* https://web.archive.org/web/20220216093911/https://www.amazon.com/Copper-Fit-Compression-Infused-Recovery/dp/B0973NS2CC (archived screen capture of https://www.amazon.com/Copper-Fit-Compression-Infused-Recovery/dp/B0973NS2CC as it appeared on February 16, 2022) last viewed on February 14, 2023.

CLASS ACTION COMPLAINT

"is infused with the soothing aroma of menthol and the energizing properties of CoQ10. The more you move, the more you release."[30]

49.    Promotional images for the Copper Fit ICE Knee Sleeve products sold through the Dick's Sporting Goods website also emphasize that the product has "Micro Encapsulated" "Menthol and CoQ10" and that those chemicals in the fabric are "Motion Activated," leading to "Relief + Recovery."[31]



50.    Promotional images for the Copper Fit ICE Knee Sleeve products sold through the Dick's Sporting Goods website also emphasize other "Features and Benefits" that the "CoQ10 PROMOTES ENERGY RECOVERY" as shown here:[32]

---

[30] *See* https://web.archive.org/web/20220216140940/https://www.amazon.com/Copper-Fit-Compression-Infused-Menthol/dp/B08NT6L6WC/ (archived screen capture of https://www.amazon.com/Copper-Fit-Compression-Infused-Menthol/dp/B08NT6L6WC/ as it appeared on February 16, 2022) viewed on February 14, 2023.

[31] *See* https://web.archive.org/web/20230118061335im_/https://dks.scene7.com/is/image/GolfGalaxy/ICE-KNEES-MULTI-USE?qlt=70&wid=500&fmt=webp&op_sharpen=1 (Archived image from Dick's Sporting Goods website as it appeared on April 13, 2021) last viewed on February 14, 2023.

[32]*See*
https://web.archive.org/web/20230118061335im_/https://dks.scene7.com/is/image/GolfGalaxy/CFICEKNEE_CFIKNLXL-Black_TEC?qlt=70&wid=500&fmt=webp&op_sharpen=1 last viewed on February 14, 2023.

---

CLASS ACTION COMPLAINT



**COPPER Fit**

Official Mark Of The
**COPPER FIT BRAND**

**ICE | Menthol Infused**
# KNEE SLEEVE
**Features & Benefits**

MENTHOL INFUSED
**COOLING SENSATION**

CoQ10
**PROMOTES ENERGY RECOVERY**

COPPER INFUSED
**HIGH PERFORMANCE KNIT**

ADVANCED COMPRESSION
**FOR MAXIMUM SUPPORT**

SEAMLESS DESIGN
**BREATHABLE KNIT**

REINFORCED BAND
**TO PREVENT SLEEVE SLIPPING**

CONTOUR DESIGN
**FOR PERFECT FIT**

51.    These claims are mirrored on Target's website for the Copper Fit ICE Knee Sleeve Copper Fit ICE Gloves, which states: "Our circular knit compression sleeve is infused with a patented micro-encapsulation technology that delivers the cooling sensation of menthol and energizing properties of CoQ10 with every movement. The more you move, the more ICE is released … ICE fabric is infused with a patented micro-encapsulation technology delivering the cooling sensation of menthol and energizing properties of CoQ10."[33]

52.    Copper Fit's claims regarding the "energizing properties of CoQ10" in Copper Fit ICE Products also appear on product pages at Zappos.com: "Each cooling knee sleeve is designed to

_____

[33] *See* https://www.target.com/p/copper-fit-ice-knee-sleeve-infused-with-cooling-action-and-menthol-l-xl/-/A-81641337 last viewed on February 14, 2023; *See also* https://www.target.com/p/copper-fit-ice-gloves-infused-with-cooling-action-38-menthol-s-m/-/A-81915268 last viewed on February 14, 2023; *See also* https://www.target.com/p/copper-fit-ice-gloves-infused-with-cooling-action-and-menthol/-/A-81641335 last viewed on February 14, 2023.

19

provide more support and help temporarily relieve muscle and joint aches. The more you move, the more menthol and CoQ10 is released for maximum comfort."[34]

### III.    Plaintiff Purchased the Copper Fit ICE Products Infused With CoQ10.

53.    On October 24, 2022, Plaintiff purchased a Copper Fit ICE Plantar Fasciitis Ankle Sleeve via Defendant's Amazon's storefront. Plaintiff purchased the Copper Fit ICE Product from her home in San Diego and the product was delivered to her San Diego, California residence soon thereafter. Plaintiff paid Amazon's retail price for the Copper Fit ICE Product at that time.

54.    Prior to purchasing the Copper Fit ICE product, Plaintiff was exposed to Defendant's online advertising regarding its claims that the CoQ10 infused in the fabric of the Copper Fit ICE Products is motion activated and released and then absorbed into the human body when using the product, and that the absorbed CoQ10 would provide health benefits, including increased energy. In addition, Plaintiff read and reviewed the product packaging, which stated that (i) the product provides "RELIEF + RECOVERY," (ii) contains "MICRO ENCAPSULATED MENTHOL & COQ10," the "CoQ10" "PROMOTES ENERGY RECOVERY" and (iv) the product is "Motion activated, the more you move the more you gain." Plaintiff read and relied on all of these statements (both online and on the labels) when purchasing the Copper Fit ICE Product.

55.    Plaintiff purchased the Copper Fit ICE Product believing Defendant's statements that the CoQ10 infused in the fabric is released and then absorbed into the human body when moving while using the product, and that the absorbed CoQ10 would provide health benefits, including increased energy. The CoQ10 infused in the fabric is useless and the Plaintiff received no such benefits.

56.    Defendant's omission regarding the true benefits of CoQ10 was material to Plaintiff and Class Member's purchase of the Copper Fit ICE Products.

57.    Plaintiff would purchase the Copper Fit ICE Products in the future if they were formulated in a manner that provided the benefits promised or implied by the packaging. Plaintiff regularly visits places where Defendant's products are sold. However, if and when Plaintiff sees the products on the store shelves in the future, she would have no way of knowing whether Defendant

---

[34] *See* https://www.zappos.com/p/copper-fit-ice-knit-compression-knee-sleeve-infused-with-menthol-and-coq10-for-recovery/product/9679973 last viewed on February 14, 2023.

CLASS ACTION COMPLAINT

changed the formulation of its product in a manner that would render its labeling claims true.

58.    Had Plaintiff known that the CoQ10 infused in the fabric of the Copper Fit ICE Products is not absorbed into the human body and, even if absorbed in some amount, provides no health benefits, she would not have purchased Defendant's Copper Fit ICE Products or, at the very least, would not have paid the price premium charged for the Copper Fit ICE Products compared to a cheaper compression garment that is not infused with CoQ10.

## CLASS DEFINITION AND ALLEGATIONS

59.    Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and on behalf of all other persons similarly situated.

60.    Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

**California State Class** (the "**Class**")
All persons who, within the fullest period of law, purchased Copper Fit ICE Products in the state of California.

61.    Excluded from the class are Defendant, its parents, subsidiaries, affiliates, officers and directors, judicial officers and their immediate family members and associated court staff assigned to this case, and those who purchased Copper Fit ICE Products for resale.

62.    Plaintiff reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

63.    The proposed class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

64.    Plaintiff expressly disclaims any intent to seek any recovery in this action for personal injuries that they or any Class member may have suffered.

65.    **Numerosity**.  This action is appropriately suited for a class action. The members of the Class are so numerous that joinder of all members of the Class is impracticable.  Plaintiff is informed, believe, and thereon allege, that the proposed Class contains thousands of purchasers of the Copper Fit ICE Products who have been damaged by Copper Fit's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff. However, Defendant's books and records will reveal additional information regarding the size and identity of the putative Class members.

21

CLASS ACTION COMPLAINT

66.  **Commonality.**  This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

- Whether Defendant's conduct, as alleged herein, constitutes a violation of California Civil Code §§ 1750, *et seq.***;**

- Whether Defendant's conduct, as alleged herein, constitutes a violation of California Civil Code §§ 17200, *et seq.***;**

- Whether Defendant labeled, advertised, marketed, and/or sold each Copper Fit ICE Products with claims that CoQ10 infused into the fabric of the products is motion activated and then released and absorbed into the human body when using the product;

- Whether Defendant labeled, advertised, marketed, and/or sold each Copper Fit ICE Products with claims that the purportedly absorbed CoQ10 provides health benefits, including increased energy;

- Whether Defendant's labeling, advertising, marketing, and/or selling of each Copper Fit ICE Products with claims that CoQ10 infused into the fabric of the products is motion activated and then released and absorbed into the human body when using the product was and/or is false, fraudulent, deceptive, and/or misleading;

- Whether Defendant's labeling, advertising, marketing, and/or selling of each Copper Fit ICE Products with claims that the purportedly absorbed CoQ10 provides health benefits, including increased energy, was and/or is false, fraudulent, deceptive, and/or misleading;

- Whether Defendant made omissions of material fact to Plaintiff and the Class regarding the Copper Fit ICE Products; and

- How much of a price premium did Defendant charge for the Copper Fit ICE Products when compared to similar compression sleeves.

67.  **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were subject to Copper Fit's blatant misrepresentations of material information.  Moreover,

22

1  Plaintiff's claims are typical of the Class members' claims. Plaintiff is advancing the same claims and

2  legal theories on behalf of herself and all members of the Class.

3       68.  **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests

4  of the members of the Class. Plaintiff purchased a Copper Fit ICE Products and was harmed by Copper

5  Fit's deceptive misrepresentations. Plaintiff has therefore suffered an injury in fact as a result of

6  Copper Fit's conduct, as did all Class members who purchased Copper Fit ICE Products.

7       69.  **Superiority**. A class action is superior to other methods for the fair and efficient

8  adjudication of this controversy. The damages or other financial detriment suffered by individual Class

9  members is relatively small compared to the burden and expense that would be entailed by individual

10  litigation of their claims against Copper Fit. It would be virtually impossible for a member of the Class,

11  on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if

12  the Class members could afford such individualized litigation, the court system could not.

13  Individualized litigation would create the danger of inconsistent or contradictory judgments arising

14  from the same set of facts. Individualized litigation would also increase the delay and expense to all

15  parties and the court system from the issues raised by this action. By contrast, the class action device

16  provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and

17  comprehensive supervision by a single court, and presents no management difficulties under the

18  circumstances here.

19       70.  Plaintiff seeks monetary damages, including statutory damages on behalf of the entire

20  Class, and other equitable relief on grounds generally applicable to the entire Class, to enjoin and

21  prevent Copper Fit from engaging in the acts described. Unless a Class is certified, Copper Fit will be

22  allowed to profit from its deceptive practices, while Plaintiff and the members of the Class will have

23  suffered damages. Unless a Class-wide injunction is issued, Copper Fit will continue to commit the

24  violations alleged, and the members of the Class and the general public will continue to be deceived.

25       71.  Copper Fit has acted and refused to act on grounds generally applicable to the Class,

26  making final injunctive relief appropriate with respect to the Class as a whole.

27  / / /

28

CLASS ACTION COMPLAINT

### FIRST CAUSE OF ACTION
#### VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW
#### CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.* ("FAL")
#### (ON BEHALF OF PLAINTIFF AND THE CLASS)

72.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-72 as if fully set forth herein.

73.    Plaintiff brings this count on behalf of herself and the Class against Defendant.

74.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

75.    It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

76.    As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendant relating to the representations and omissions on the Copper Fit ICE Products' labeling and advertising misled consumers acting reasonably.

77.    Plaintiff and Class members suffered injuries in fact as a result of Defendant's actions as set forth herein because they purchased Defendant's Copper Fit ICE Products in reliance on Defendant's false and misleading claims as alleged herein.

78.    Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Copper Fit ICE Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from its advertising.

79.    Defendant profited from selling the falsely and deceptively advertised Copper Fit ICE Products to unwary consumers.

80.    As a result, Plaintiff and the Class are entitled to equitable relief, restitution, and an

1  order for the disgorgement of the funds by which Defendant was unjustly enriched.

2      81.    Plaintiff and the Class were damaged because they would not have purchased (or paid

3  a premium) for Defendant's Copper Fit ICE Products had they known the true facts regarding the

4  representations contained on the packaging of the Copper Fit ICE Products and throughout

5  Defendant's advertising and marketing for the Copper Fit ICE Products.

6                          **SECOND CAUSE OF ACTION**
                  **VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**
7                     **CAL. CIV. CODE §§ 1750, *ET SEQ.* ("CLRA")**
                         **(ON BEHALF OF PLAINTIFF AND THE CLASS)**
8

9      82.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-72

10  as if fully set forth herein.

11     83.    Plaintiff brings this claim on behalf of herself and the Class against Defendant.

12     84.    Defendant is a "person" within the meaning of California Civil Code § 1761(c).

13     85.    Plaintiff and the Class are "consumers" as defined by California Civil Code § 1761(d).

14     86.    The Copper Fit ICE Products that Defendant manufactured, marketed, and sold

15  constitute "goods" as defined by California Civil Code § 1761(a).

16     87.    The purchases of the Copper Fit ICE Products by Plaintiff and the Class constitute

17  "transactions" as defined by California Civil Code § 1761(e).

18     88.    Plaintiff and the Class members purchased the Copper Fit ICE Products for personal,

19  family and household purposes as contemplated under California Civil Code § 1761(d).

20     89.    Venue is proper under California Civil Code § 1780(d) because a substantial portion of

21  the transactions at issue occurred in this District. Venue is also proper because Plaintiff resides in this

22  District.

23     90.    Defendant failed to disclose the aforementioned false claims.

24     91.    Defendant's deceptive practices were specifically designed to induce Plaintiff and the

25  Class members to purchase the Copper Fit ICE Products.

26     92.    To this day, Defendant continues to engage in unlawful practices.

27  / / /

28

93. Defendant deceived consumers, including Plaintiff and the Class, in that Defendant knew of the false claims, and had exclusive knowledge of the false claims, but failed to disclose, or actively concealed, the truth behind the false claims, and failed to correct the problem.

94. Defendant's false statements regarding the Copper Fit ICE Products were material to Plaintiff and Members of the Class because a reasonable person would have considered them important in making purchase decisions and because Defendant had a duty to disclose the truth.

95. Plaintiff and members of the Class reasonably relied upon Defendant's material misrepresentations and omissions, as alleged herein, and would not have purchased, or would have paid less money for, the Copper Fit ICE Products had they known the truth.

96. As a direct and proximate result of Defendant's material misrepresentations and omissions in violation of the California Civil Code, Plaintiff and members of the Class have been injured.

97. To this day, Defendant continues to engage in unlawful practices in violation of the CLRA. Defendant continues to conceal the defective nature of the claims it made regarding the Copper Fit ICE Products and have omitted to disclose, on inquiry from Plaintiff, the truth.

98. Pursuant to the provisions of Cal. Civ. Code § 1782(a), on February 10, 2023, Plaintiff sent a notice letter to Defendant to provide it with the opportunity to correct its' business practices.

99. Pursuant to Cal. Civ. Code § 1780, Plaintiff, on behalf of herself and members of the Class, seeks an order from this Court enjoining Defendant from continuing the methods, acts and practices set forth above and a declaration that Defendant's conduct violates the Consumers Legal Remedies Act.  If Defendant does not correct the problem within 30 days, Plaintiff will amend (or seek leave to amend) to seek actual and punitive damages and attorneys' fees and costs under the CLRA.

/ / /

/ / /

/ / /

/ / /

26

CLASS ACTION COMPLAINT

### THIRD CAUSE OF ACTION
#### VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.* ("UCL")
#### (ON BEHALF OF PLAINTIFF AND THE CLASS)

100.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-72 as if fully set forth herein.

101.  Plaintiff brings this claim on behalf of herself and the Class against Defendant.

102.  Defendant is a "business" as defined by Cal. Bus. & Prof. Code § 17200.

103.  The UCL proscribes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

104.  The conduct of Defendant alleged above constitutes unlawful, unfair or fraudulent business practices in violation of the UCL, California Business and Professions Code §§ 17200, *et. seq*.

105.  Defendant's conduct is unlawful, in violation of the UCL, because it violates the CLRA, Cal. Civ. Code §§ 1750, *et seq.*, and it violates the FAL, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, as alleged in this Class Action Complaint.

106.  Defendant's conduct is unfair in contravention of the UCL because it acted in an unethical, unscrupulous, outrageous, oppressive, and substantially injurious manner with respect to Plaintiff and the California Sub-Class members.

107.  Defendant knew the above-described statements were false but failed to disclose it to consumers and instead continued to sell the mislabeled Copper Fit ICE Products.

108.  The gravity of harm resulting from Defendant's unfair conduct outweighs any potential utility. The practice of selling the Copper Fit ICE Products with false advertising, labeling, or marketing, failing to disclose the true nature of the products, and continuing to sell Copper Fit ICE Products ***to this day*** with the false advertising, labeling, or marketing, harms the public at large and is part of a common and unform course of wrongful conduct.

109.  The harm from Defendant's conduct was not reasonably avoidable by consumers. The Copper Fit ICE Products suffer from a latent defect at the point of sale. Plaintiff and the Class did not

---

CLASS ACTION COMPLAINT

know of, and had no reasonable means of discovering, that the Copper Fit ICE Products are defective, especially at the point of purchase.

110. There were reasonably available alternatives that would have furthered Defendant's business interests of satisfying and retaining its customers while maintaining profitability, such as: (1) acknowledge the false statements and changing the advertising, labeling, and marketing of the Copper Fit ICE Products; (2) adequately disclosing the false nature of the advertising, labeling, and marketing to prospective purchasers; and (3) properly testing and/or inspecting the Copper Fit ICE Products before placing them in the stream of commerce.

111. As a direct and proximate cause of Defendant's business practices, Plaintiff and the Class suffered injury in fact and lost money or property, because they purchased Copper Fit ICE Products they otherwise would not have, or in the alternative, would have paid less for.

112. Absent Defendant's unlawful and unfair conduct, Plaintiff and the Class members, who were all unaware of the false advertising, labeling, and marketing at the time of purchase, would not have purchased their Copper Fit ICE Products, or would not have purchased their Copper Fit ICE Products at the prices they did.

113. Through its unlawful and unfair conduct, Defendant acquired Plaintiff and the Class members' money directly and as passed on by retailers. Plaintiff and the Class members suffered injury in fact, including lost money or property, as a result of Defendant's unlawful and unfair conduct.

114. Plaintiff and the Class members accordingly seek appropriate relief, including restitution under the UCL, and such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and fraudulent practice.

115. Defendant's unfair business practices, as described herein, present a continuing threat to Plaintiff and the Class, and the general public, in that Defendant continues to make misrepresentations and continues to fail to disclose to consumers the defective nature of the Copper Fit ICE Products. Plaintiff and the Class are entitled to equitable relief, including an order directing Defendant to disclose the false nature of their advertising, labeling, and marketing to consumers and

CLASS ACTION COMPLAINT

to provide restitution and disgorgement of all profits paid to Defendant as a result of their unfair, deceptive, and fraudulent practices, and a permanent injunction enjoining such practices.

### FOURTH CAUSE OF ACTION
### UNJUST ENRICHMENT
### (ON BEHALF OF PLAINTIFF AND THE CLASS)

116.  Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-72 as if fully set forth herein.

117.  Plaintiff brings this claim on behalf of herself and the Class against Defendant.

118.  This claim is brought under the laws of the State of California.

119.  Defendant's conduct violated, *inter alia*, state, and federal law by manufacturing, advertising, labeling, marketing, distributing, and selling the Copper Fit ICE Products while misrepresenting and omitting material facts, including by making the labeling representations and omissions alleged herein.

120.  Defendant's unlawful conduct allowed it to knowingly realize substantial revenues from selling the Copper Fit ICE Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Class members and to Defendant's benefit and enrichment. Defendant has violated fundamental principles of justice, equity, and good conscience.

121.  Plaintiff and Class members conferred significant financial benefits and paid substantial compensation to Defendant for the Copper Fit ICE Products, which were not as Defendant represented them to be.

122.  Defendant knowingly received and enjoyed the benefits conferred by Plaintiff and the Class members.

123.  It is inequitable for Defendant to retain the benefits conferred by Plaintiff and the Class members' overpayments for the Copper Fit ICE Products.

124.  Plaintiff and Class members seek to establish a constructive trust from which Plaintiff and Class members may seek restitution.

/ / /

/ / /

29

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek a judgment against Defendant, as follows:

A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as a representative of the Class and Plaintiff's undersigned attorneys as Class Counsel to represent the Class Members;

B.    For an order declaring that Defendant's conduct violated the laws referenced herein;

C.    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D.    For statutory and compensatory damages in amounts to be determined by the Court and/or jury, except for monetary damages under the CLRA;

E.    For prejudgment interest on all amounts awarded;

F.    For injunctive relief as pleaded or as the Court may deem proper;

G.    For an order of restitution and all other forms of equitable monetary relief;

H.    For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit, except under the CLRA;

I.    Damages in an amount to be determined at trial; and

J.    For such other and further relief as the Court may deem proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury as to all triable issues.

30

CLASS ACTION COMPLAINT

1    Dated: February 15, 2023          Respectfully submitted,

2                                      By: */s/ Kyle McLean*

3                                      **SIRI & GLIMSTAD LLP**
                                       Kyle McLean, Esq.  (Cal. Bar No. 330580)
4                                      Mason Barney, Esq. (*Pro Hac Vice to be filed*)
                                       745 Fifth Ave, Suite 500
5                                      New York, NY 10151
                                       Telephone: 212-532-1091
6                                      Facsimile: 646-417-5967
                                       Email: mbarney@sirillp.com
7                                      Email: kmclean@sirillp.com

8

9                                      **LAUKAITIS LAW FIRM LLC**
                                       Kevin Laukaitis, Esq. (*Pro Hac Vice to be filed*)
10                                     737 Bainbridge Street #155
                                       Philadelphia, PA 19147
11                                     Phone: (215) 789-4462
                                       Email: klaukaitis@laukaitislaw.com
12

13                                     *Attorneys for Plaintiff and the Proposed Class*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

31

CLASS ACTION COMPLAINT

## CLRA VENUE DECLARATION PURSUANT TO
## CALIFORNIA CIVIL CODE SECTION 1780(D)

I, Kyle McLean, Esq., declare as follows:

1. I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am an attorney at SIRI & GLIMSTAD LLP, counsel of record for Plaintiff in this action. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2. The Class Action Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Class Action Complaint occurred in the Southern District of California.

3. I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct that this declaration was executed at Daly City, California on this 15th day of February, 2023.

*/s/ Kyle McLean*
Kyle McLean, Esq.  (Cal. Bar No. 330580)

32

CLASS ACTION COMPLAINT